Selden, J.
This case depends upon the construction to be given to the act of February 27, 1855, amendatory of the several acts for the assessment and collection of taxes in this State. Section 1 of that act is as follows: “All persons and associations doing business in the State of Hew. York, as merchants, bankers, or otherwise, either as principals or partners, whether special or otherwise, and not residents of this State, shall be assessed and taxed on all sums invested in any manner in said business, the same as if they were residents of this State; and said taxes shall be collected from the property of the firms, persons, and associations, to which they severally belong.”
I have no doubt, and shall" therefore assume, that the words, “persons and associations,” used in this statute, should be construed to include corporations. But the words descriptive of the property in respect to which they are to be assessed, are among the most indefinite in the language. The word *244 “ business” embraces everything about which a person can be employed; and a sum is “ invested” whenever its amount is represented by anything but money. No conclusion can be arrived at in this case, by following out the precise lexicographical meaning of these terms. The statute is to be interpreted, therefore, by the light to be obtained from its general scope and tenor: from other statutes in pari materia: and from a consideration of the evils and abuses at which it was aimed.
It was not uncommon, previous to the passage of the act, as the history of our legislation shows, for foreign corporations, particularly insurance companies, to establish agencies in the city of New York, and perhaps elsewhere in this State, for the transaction of their corporate business. These agencies were protected by our laws and carried on a profitable business within this State, and yet contributed nothing towards the expenses of government. They came in direct competition with domestic'corporations, which were heavily taxed. It was certainly just and right that they, or the corporations by which they were established, should be made to contribute, to some extent, to the public burdens. But there was also another class of cases which called for special legislation, and which the legislature probably had more directly in view in passing the act of 1855. Many persons, engaged in business in the city of New York as partners of commercial firms or otherwise, resided in New Jersey, Connecticut, or elsewhere out of this State. These persons frequently had large amounts of property in this State, and enjoyed the fruits of a profitable business carried on under the protection of our laws; and yet, by reason of the rule that personal property is deemed to follow the person of the owner, they escaped taxation in respect to this property, at least in this State, and probably in most cases altogether.
There is no doubt that, to provide for these two classes of cases, especially the last, was the main object of the act of 1855. That it was never intended to include a case like the present, seems to me clear. In the two classes of cases referred to, the investment of funds by the non-residents has more or less of *245 permanency. It is not the mere transit of property through the State for the purposes of a market, but the funds are used for the prosecution of continuous business. Taxes are levied, for the most part, annually. They are the consideration which property holders pay for the protection which the government ' and laws afford to them and their property for the year. But, if the commissioners in this case are right, if the property is. caught within this State for a single day while the assessors are engaged in the performance of their duties, its owner may be as heavily taxed as if'it had been here throughout the entire year.
It is difficult to see any difference in principle between the-present case and that of a drover who transports his herds of cattle by railroad to the city of New York for sale; and yet, I-apprehend, no one ever supposed the owner of the cattle, if a non-resident, to be taxable in such a case. It may be .said that the Parker Mills had a store and an agent in the city of New York. So the drover may have his field or his yard for keeping his cattle, and his herdsman to take, care of them. The cases are, I think, parallel; and the reason why the statute does not apply to either is, that there is no sum invested or used for the purpose of carrying on a continuous business in this State.
That it never was the policy of the State to impose taxes upon property sent into the State for the mere purpose of sale, is shown by the course of legislation on this subject. The general tax law provides (1 B. S., 389, § 5) that every person shall be assessed in the town or ward where he resides, for all personal estate owned by him, “ including all such personal estate in his possession, or under his control as trustee, guardian, executor,” &c. By the amendatory act of April 15, .1851 (Sess. Laws, 1851, ch. 176), agents are added to the class of persons named in the previous statute; btit lest the clause, with this addition, should be construed more broadly than the legislature intended, it was further provided that “ the products of any State of the United States, consigned to "agents in any town or ward in this State for sale on commission for the benefit of the owner thereof, shall not be assessed to such agents.”
*246 The present case does not come strictly within the terms of this exception. The word “ products,” as here used, means, as I suppose, the natural agricultural products of the country. But I can see no distinction in principle between the present case and the case excepted. In both, the commodity is produced and owned in other States, and is brought temporarily into this State for the mere purposes of a market. Every reason which would lead to exemption from taxation in one case, applies, as I conceive, equally to the other. The exception is to be considered rather as indicative of the scope intended to be given to the principal clause, than as founded upon any reasons specially applicable to the natural products of the country as distinct from other property. It is a case to which the maxim, expressio urdus exclusio est alterms, does not apply. The exception was undoubtedly inserted, from abundant caution, to prevent a misconstruction of the previous clause, authorizing the taxation of trustees and agents for the property in their hands; and not because the legislature intended to discriminate between the products of agricultural and other kinds of labor. It shows that it was no part of the policy of the legislature, when that act was passed, to compel the citizens of other States to contribute to the support of our government simply because they send a portion of the products of their industry to this State to be sold. It is clear, therefore, that the property of the relators could not have been taxed to their agent under the law of 1851; and I see no reason to suppose that it was intended, by the law of 1855, to adopt a different policy in respect to property so situated. My conclusion, therefore, is, that the judgment of the Supreme Court should be reversed, and that the proceedings should be remitted, with instructions to cause the names of the relator to be erased from the assessment roll, and the corresponding tax to be canceled.
All the judges concurring,
Ordered accordingly.